(82 South. 417)

ORTMAN v. ORTMAN. (1 Div. 97.)

(Supreme Court of Alabama. May 15, 1919.)

1. HUSBAND AND WIFE ⊙⟿4—DUTY TO SUPPORT FAMILY.

A man owes to his wife and family the duty to maintain them as well as he owes such duty to the state, an obligation not merely to keep them from becoming a charge on the public, but properly to maintain them, having regard for their established condition in life and the circumstances materially affecting their lives and pursuit of happiness as citizens.

2. DIVORCE ⊙⟿199— ALLOWANCES AND ALIMONY—CLASSES—STATUTE.

Under Code 1907, §§ 3803, 3805, allowances to a wife pending suit for divorce and decree for alimony are of several classes, first, the statutory allowance for maintenance pending the suit, second, the allowance for maintenance by alimony after separation when no divorce has been granted, such allowance being granted under the original chancery jurisdiction and the decree kept within the control of the court, and, third, the allowance to the wife on decree of divorce taking into consideration the value of the estates of the respective parties and the condition of the family, the allowance to be as liberal as the husband's estate will permit, where the divorce is for his misconduct.

3. DIVORCE ⊙⟿245(2) — ALIMONY—MODIFICATION OF DECREE.

A divorced husband, against whose estate alimony has been awarded the wife on changed conditions affecting his property or capacity to earn money, may show the fact to the court on proper application for modification of the decree awarding alimony.

4. DIVORCE ⊙⟿240(5) — ALIMONY—EVIDENCE.

Decree of divorce awarding to plaintiff wife, whose own estate yielded a net income of $41.-75 a month, and who received $50 a month from her brother, permanent alimony in the sum of $58.25 a month, held sustained by evidence as to the estate of the husband, who for a course of years had expended $150 a month on his family; the wife testifying that $125 a month was the least she could maintain her former standards of living upon.

5. DIVORCE ⊙⟿221—ATTORNEY'S FEES.

The allowance for reasonable attorney's fees to a wife suing for divorce is not specifically provided for by statute, but is governed by general principles of law, and depends on the good faith of the proceedings and the probability of success.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Suit for divorce by Anna F. Ortman against Emile Ortman. From the decree, allowing alimony pendente lite in the sum of $663, and permanently in the sum of $58.25 per month, defendant appeals. Affirmed.

It appeared from the evidence that the respondent was in the drug business, but just what the business was worth or paid in was not disclosed. It further appeared that during the years of their married life respondent contributed $100 per month towards household expenses and paid the other bills, amounting as estimated to about $50 per month additional to the household expenses. It appeared that since the separation the respondent paid for a while the sum of $50, and later reduced it to $40 per month, and that this went to the support for the two children. It further appeared that the complainant was in possession of the two houses, from which she had an annual income of $502.99; that her brother contributed the sum of $50 per month to her support; that her daughter was in Columbia University, and had two more years there; that complainant's brother bore most of this expense; and that the son was at work and self-sustaining. The chancellor concluded that complainant had an income of $91.75 per month, and required respondent to pay the difference between that sum and $150 per month.

Gordon & Edington, of Mobile, for appellant.

Smiths, Young & Leigh, of Mobile, for appellee.

THOMAS, J. The question on which the decree of the court is challenged is the amount allowed to the wife pendente lite and as permanent alimony.

[1] The complainant testified she had no knowledge of the extent of her husband's business or the amount of his earnings; that they had lived together in a state of matrimony for about 19 years prior to their separation in February, 1916; that during this time he had contributed $150 a month to the support of his family and, in addition, paid certain sums for clothing, dental bills, and the like; that $125 was the smallest sum on which she could sustain herself in the sphere of life her husband had maintained her; and that the net income from her properties was $41.75 a month, or an aggregate of $501 a year. By the contribution of the husband in the amount and for the long term indicated, he fixed a standard or "condition" in life for his family that is not successfully contradicted or overturned in this proceeding; nor does it appear that such "condition" of his family was inconsistent with their former station or condition in life and was unnecessary to their maintenance at the time of the rendition of the decree. A man owes a duty of such maintenance to his family as well as to the state; not only that he keep them from becoming a charge upon the body politic (Munn v. Illinois, 94 U. S. 113, 124, 24 L. Ed. 77; Williams v. Village of Port Chester, 72

App. Div. 505, 76 N. Y. Supp. 631, 634), but properly to maintain them, having regard for their established condition in life and the circumstances materially affecting their lives and pursuit of happiness as citizens. That is, to support them to the best of his ability in the condition to which they (with him) have been accustomed.

[2] Allowances to the wife pending a suit for divorce and decree for alimony are of several classes: (1) The statutory allowance for maintenance to the wife pending the suit for divorce "out of the estate of the husband, suitable to his estate and the condition in life of the parties," and secured to the wife as a matter of right. Code 1907, § 3803; Coleman v. Coleman, 73 South. 473, 475.[1] (2) The allowance for maintenance of the wife by alimony after separation when no divorce has been granted, being independent of statute and granted under the original jurisdiction of the chancery court. Glover v. Glover, 16 Ala. 440, 443–445; Johnson v. Johnson, 190 Ala. 527, 67 South. 400; Murray v. Murray, 84 Ala. 363, 365, 4 South. 239; Lang v. Lang, 70 W. Va. 205, 73 S. E. 716, 38 L. R. A. (N. S.) 950 et seq., Ann. Cas. 1913D, 1129. Such decrees may be kept within the control of the court, so that subsequent changes or orders may be made by the court as may be just and necessary under any changed circumstances of the parties or of their properties. Johnson v. Johnson, 195 Ala. 641, 643, 71 South. 415; Folda v. Folda, 174 Ala. 286, 288, 56 South. 533; Jones v. Jones, 174 Ala. 461, 464, 57 South. 376; Clisby v. Clisby, 160 Ala. 572, 576, 49 South. 445, 135 Am. St. Rep. 110. (3) The allowance to the wife on decree of divorce, made by statute, "out of the estate of the husband, taking into consideration the value thereof [the respective estates of the two parties] and the condition of his family" (Code 1907, § 3804); and where the divorce is in favor of the wife for the misconduct of the husband the allowance is required to be "as liberal as the estate of the husband will permit, regard being had to the condition of his family and to all the circumstances of the case" (Code, § 3805). It has been held that decrees for permanent alimony after divorce may be made payable in installments, according to the justice of the case and the circumstances of the parties at interest, and may also be kept open and within the control of the court for any necessary changes therein which the circumstances or necessities of the parties' personal and property relations may demand or dictate. Williams, Adm'x, v. Hale, 71 Ala. 83, 87; Edwards v. Edwards, 84 Ala. 361, 363, 3 South. 896; Jones v. Jones, 131 Ala. 443, 445, 447, 31 South. 91; Tolman v. Leonard, 6 App. D. C. 224, 233; 2 Bish. Mar. & Div. §§ 429, 436, et seq.; 14 Cyc. 785, 786.

For general authorities on the necessity and right to modify such a decree, to make provision for the support of children when no such provision was contained in the original decree, see Spain v. Spain, 177 Iowa, 249, 158 N. W. 529, L. R. A. 1917D, 319, Ann. Cas. 1918E, 1225; to meet necessities of the case arising from the subsequent conduct of the parties, Weber v. Weber, 153 Wis. 132, 140 N. W. 1052, 45 L. R. A. (N. S.) 875, Ann. Cas. 1914D, 593; the subsequent marriage of the wife, Staton v. Staton, 164 Ky. 688, 176 S. W. 21, L. R. A. 1915F, 820, 824; the subsequent marriage of the husband, not affecting the original decree, State ex rel. Brown v. Brown, 31 Wash. 397, 72 Pac. 86, 62 L. R. A. 974; because of changed conditions of the person or property of the parties, Van Gordor v. Van Gordor, 54 Colo. 57, 129 Pac. 226, 44 L. R. A. (N. S.) 998. The authorities are collected to the contrary in Ruge v. Ruge, L. R. A. 1917F, 721, 729, note; Alexander v. Alexander, 13 App. D. C. 334, 45 L. R. A. 806, 813.

The case of Smith v. Smith, 45 Ala. 264, 267, 268, is cited as being opposed to the foregoing authorities by our court and as indicating errors in the instant decree for permanent alimony. In that case the husband was divorced from the wife in 1856 on the ground of her adultery. Thereafter Mrs. Smith filed a bill to set aside the former decree for fraud by the husband in its procurement; and, so far as Mrs. Smith's bill sought to open the former decree, it was dismissed (in 1859), but on her plea for permanent alimony the court rendered a decree in her favor against her late husband "for one hundred dollars per annum as permanent alimony, commencing 1st January, 1860, payable at the end of the year, and at the end of each year thereafter." No part of this allowance being paid, Mrs. Smith had executions issued and levied on Mr. Smith's property in 1866. An injunction was sought by him to restrain the collection by executions of the amounts indicated in the decree allowing alimony to Mrs. Smith. The equity of the bill for injunction depended upon the character of the decree allowing alimony. Mr. Justice Peters observed, if "this decree was absolute, then the bill was was without equity, and the decree could not be afterwards suspended or altered"; and further said:

"The right, then, to an allowance in favor of the wife, upon a final dissolution of the marriage, depends on our statute. The statute in force at the date of the divorce and the allowance of what is called alimony in the decree in this case was in the following words, to wit: 'If the wife has no separate estate, or if it be insufficient for her maintenance, the chancellor, upon granting a divorce, must decree the wife an allowance out of the estate of the husband, taking into consideration the value thereof, and the condition of his family.' Code, § 1971; Rev. Code, § 2361. This 'allowance' to the wife is not, in fact, alimony, in the sense

[1] 198 Ala. 225.

of the ecclesiastical law of England; but it is more strictly an arrangement in lieu of a division of the estate of the parties, so as to return to the wife her just portion of that property which mutually belonged to both during the marriage, and which the labor and care of both may have equally contributed to procure and preserve. This allowance was intended to supply the wife with the means of commencing life anew. * * * Such purpose could best be accomplished by making such allowance absolute and permanent. * * * The form and manner of granting the allowance in this case cannot now be inquired into or altered. * * * That the allowance was a sum certain, to be paid from year to year, does not change the character of the decree. This, in a decree for divorce from bed and board, is such a decree as may be subsequently modified. Shef. Mar. & Div. p. 596, and cases there cited. But this is not such a case."

This view is not in harmony with our subsequent decisions. In Edwards v. Edwards, supra (84 Ala. 362, 363, 3 South. 897), Mr. Chief Justice Stone said:

"That part of the decree which relates to what is called permanent alimony, we leave as the chancellor fixed it, $30 semiannually, making $60 per annum; subject, however, to such alteration as the chancellor may hereafter make, to be dictated by changes that may occur in personal or property relations. Williams v. Hale, 71 Ala. 83."

To like effect was the announcement in Jones v. Jones, supra (131 Ala. 445, 447, 31 South. 91), where the record shows that "on the 3d day of July, 1891, the court rendered a decree on a bill filed by the petitioner against the defendant, divorcing both parties from the bonds of matrimony, and further decreed to the complainant in said cause temporary alimony" and, also, "permanent alimony fixed in the sum of $25, payable by the defendant on the 3d day of each succeeding month thereafter. This decree further provided that, 'upon the failure to pay such monthly installment, the court reserves the right to make the necessary orders for the coercion of the defaulting installments; and the court will retain the case on the docket for such orders as may be necessary in the premises'"; and it was further said that—

"If the court had the right and power under its former decrees in the cause to control the enforcement and execution of said decrees, then there can be no question under the facts of the rightfulness of the decree here appealed from. It is quite clear that, under the provisions of the former decree, the right to control the enforcement and collection of the same was reserved to the court, and in cases of this character we think the propriety of such reservation by a court of equity is highly proper, as such court has not only the power, but should always in its exercise so mold its decrees that justice is meted out without oppression, especially in provisions for payments of money

in the future where the ability to make such payments are dependent upon future contingencies. What was said by this court in Edwards v. Edwards, 84 Ala. 362 [3 South. 896], and Williams v. Hale, 71 Ala. 83, is in line with the principle above stated."

Thus was the Smith Case in effect modified. If, however, the decree for alimony is one sum in gross and payable at one time, and the decree is not kept open by its terms, after expiration of the time fixed by law for finality of decrees, it is not thereafter subject to change by the court.

As to the consideration that may be given by the court to the husband's ability to respond in a proper allowance made for the maintenance of his family, pending the suit for divorce, in Ex parte Whitehead, 179 Ala. 652, 653, 60 South. 924, 925, it is said that a husband's ability to pay temporary alimony is not to be determined by a reference merely to the amount of his invested capital, but the court will take into consideration his age, vigor, activity in business, and personal earning capacity, in connection with his other properties; and such allowance, based upon "the husband's earnings or his ability to earn money in connection with all the circumstances of the case," will be sustained. 2 Am. & Eng. Encyc. of Law, p. 123; 2 Bish. Mar. & Div. (6th Ed.) §§ 455, 457. This rule was followed in Johnson v. Johnson, 195 Ala. 641, 71 South. 415, 416, where the suit was for alimony alone; and was cited with approval in Ford v. Ford, 78 South. 873,[2] where the proceeding was for the enforcement of payment of an allowance to the wife pending suit. In Ex parte Edwards, 183 Ala. 659, 662, 62 South. 775, 776, it was said that the essential equity of the wife's application seeking some provision for her maintenance pending the suit and for solicitor's fees is that she is entitled as a matter of legal right to some provision therefor, but "it does not follow that because complainant's means are large the allowances to defendant should be large. The court should consider what manner of woman she appears to be, her means, her ability to earn a livelihood, and what promise of complication the proceeding holds."

The citation made by Judge Sayre of 2 Am. & Eng. Ency. of Law, p. 123, finds its place under section IV on "Permanent Alimony." The text is supported by abundant authority, and is as follows:

"(b) Circumstances determining:

"(1) *Estate and Faculties of Husband.*—In determining the amount of alimony to be allowed, the court must inquire into the circumstances of the parties, and particularly into the financial condition of the husband, his ability to earn money, the amount of his property at the time, and his annual income. The fact that the husband has no estate is no ground for denying the wife alimony; but, where he is shown to be able-bodied and capable of making

[2] 201 Ala. 519.

money, the court will compel him to provide the wife with support according to their circumstances and condition in life."

That is, he may not be compelled by personal labor to earn money, yet, if he does, to pay it to his wife as decreed. In 2 Bish. Mar. & Div. §§ 455, 457, the author collects authorities on the subject of "What may blend with the faculties to determine the amount," such considerations for the court being the wife's income or other means of support possessed by her, the joint labor and capacity for work of the husband and wife, their joint income; things blending with income, as personal labor, sources from which the common property came, whether there are children or other relatives to be supported or educated and on whom the burden thereof devolves; the nature, extent, and clearness of proof of the husband's delictum, the demeanor and conduct of the wife toward the husband during the cohabitation; the ability of each party to earn money; the wife's forbearance and waiting to bring her suit; the husband's condition in life, health, and needs; the wife's condition in life, health, and needs; the ages of the parties and the cause of divorce (Lovett v. Lovett, 11 Ala. 763, 770); the ability of the court to enforce the decree (Bulke v. Bulke, 173 Ala. 138, 55 South. 490). In consideration for the husband, the decree should not be to "cripple him by compelling a sacrifice of his property. His ability to pay and hers to collect should be alike taken into the account and duly adjusted."

[3] The defendant did not testify. It is true that complainant did not know the value of the husband's stock of drugs, or the amount of his earnings. She did, however, testify to the fact that for many years prior to the date of their separation the husband's earnings and personal capacity or ability for earning money, in connection with his surrounding circumstances and condition of his business, were sufficient to enable him to contribute more than $150 a month for the support of his wife and children. There was no evidence tending to show that the value of his estate or the amount of his income or personal earning capacity had decreased since their separation. The defendant knew whether his properties had been diminished or dissipated, whether his condition in life or personal capacity to earn money had changed, and whether he was able to continue the like contributions for the support of his family. He may show the fact of such changed conditions, if it be a fact, on proper application to the court.

[4] We have carefully considered the evidence, it being read in extenso to the court, and are of opinion that it was sufficient to show the estate of the husband, taking into consideration that the condition of his property, personal earning capacity, and the condition of his family warranted the finding of the chancellor, after giving consideration to the separate estate of the wife and its insufficiency for her maintenance. Jones v. Jones, 95 Ala. 443, 452, 11 South. 11, 18 L. R. A. 95; Turner v. Turner, 44 Ala. 437; Jeter v. Jeter, 36 Ala. 391, 400, 401.

[5] The allowance for reasonable attorney's fees to the wife is held by our court not to be specifically provided for by statute, but is governed by general principles of law, and depends "on the good faith of the proceedings, and the probability of success." Coleman v. Coleman, supra. No question as to this allowance is presented by the decree, since, by agreement of counsel, the reasonable compensation for complainant's solicitors was fixed and became a part of the decree.

The decree of the circuit court, in equity, is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.